IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MALCOLM KING,

                Plaintiff,

v.

LINK WILD SAFARIS, LLC,

                Defendant.

OPINION AND ORDER

19-cv-705-slc

---

This lawsuit arises out of a contract between the parties for the hunting of North Baja Desert Bighorn Sheep. Plaintiff Malcolm King has sued defendant Link Wild Safaris, LLC (LWS) for misrepresentation (intentional, negligent and strict liability), breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment under Wisconsin law and violations of the Wisconsin Deceptive Trade Practices Act (DTPA), Wis. Stat. § 100.18. King has filed three motions that are now before the court: a motion for partial summary judgment on his breach of contract and § 100.18 claims (dkt. 12); a motion to strike the declarations of Jeff Demaske and Bradford Black (dkt. 27); and a motion to strike portions of the declaration of Jay Link (dkt. 28).

For the reasons below, I am granting both of King's motions to strike and I am granting his motion for summary judgment as to one of his breach of contract claims and his § 100.18 claim. I also conclude that King is entitled to damages in the amount of $65,772.59 for the expenses he incurred for the hunt, travel costs, and gratuity and an award of attorney fees and costs in an amount to be determined at a later date. The case will proceed to trial on King's remaining state law claims for misrepresentation, breach of the duty of good faith and fair dealing, and unjust enrichment and any additional claim for damages.

Because the motions to strike address the admissibility of evidence that is relevant to summary judgment, I will address those motions before setting forth the undisputed facts and addressing the merits of King's motion for summary judgment.

## MOTIONS TO STRIKE

### I. Demaske and Black Declarations

In support of its response to King's motion for partial summary judgment, LWS filed declarations from Jeff Demaske and Bradford T. Black. Dkts. 23-24. Both witnesses aver that they obtained a permit in 2019 for hunting North Baja Desert Bighorn Sheep in an area located roughly four hours north of the airport in Lareto, Baja California Sur state, Mexico. LWS presented this evidence to contradict the opinion of King's expert witness, Raymond Lee, that no such sheep are located in that area and that no permit has been issued for the hunting of one since 1990. *See* dkt. 19.

Prior to filing Demaske's and Black's declarations on December 11, 2020, LWS had not disclosed either individual as a fact or expert witness. The parties' initial disclosures under Rule 26(a)(1) were due January 29, 2020, King's expert witness disclosures and reports were due April 29, 2020, and LWS's expert witness disclosures were due June 29, 2020. Dkt. 5 at 4 and dkt. 8 at 2. King disclosed one expert, Lee, who provided a written report (dkt. 15-2) on May 12, 2020.[1] LWS did not file any expert disclosures. King seeks to strike the declarations under Rule 37(c)(1) as a sanction for LWS's Rule 26(a) violations.

---

[1] The parties stipulated to the late filing.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) ("The sanction for failing to comply with Rule 26(a)(2)[ ] is automatic and mandatory exclusion from trial of the non-disclosed evidence under [Rule] 37(c)(1) unless non-disclosure was justified or harmless.") (internal quotation omitted). In exercising its broad discretion in determining whether a violation of Rule 26(a) is harmless, a district court considers four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar*, 324 F.3d 857, 857 (7th Cir. 2003).

LWS contends that it was not required to supplement its Rule 26(a) disclosures because the witnesses and the nature of their testimony both were made known to King during the Rule 30(b)(6) deposition of Jay Link, the owner of LWS, on November 11, 2020. *See* Rule 26(e)(1)(A) (A party has a duty to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."). Specifically, King's counsel asked Link whether he agreed with Lee's expert opinion that the North Baja Desert Bighorn Sheep cannot be found in the part of Mexico where King was hunting. Link

4

testified he did not agree with the expert, and when asked about the basis for that position, he provided the names of Demaske and Black.

LWS faults King for not following up on the information or deposing the witnesses. King is not to blame here. LWS does not explain why it waited so long to disclose the two facts witnesses whom it is relying on to contradict Lee's unequivocal expert opinion, which had been filed more than seven months previously, in May 2020. Discovery closed in this case on October 2, 2020, and dispositive motions were due November 20, 2020. Contrary to LWS's assertion, King did not have weeks to follow up on the new information because the Rule 30(b)(6) deposition took place only nine days before King's deadline for filing his motion for summary judgment. The untimely disclosure is not harmless because it deprived King of sufficient opportunity to impeach the evidence before summary judgment. Accordingly, King's motion to strike the declarations of Black and Demaske is granted.

## II. Link Declaration

LWS argues that Link testified both as a representative of LWS and individually that he is personally aware of multiple successful hunts for the North Baja Desert Bighorn Sheep in the area around Loreto. In his declaration, Link avers that he is an experienced big game hunter and has "personal knowledge" of multiple hunters, including Black and Demaske, who successfully hunted North Baja Desert Bighorn Sheep in the area located roughly four hours north of the airport in Lareto, Baja California Sur, Mexico. Dkt. 22. However, in the 30(b)(6) deposition, Link testified that he learned this information from talking with the hunters and reading about them in hunting magazines. Dkt. 18 at 28-29. This is not personal knowledge. Link did not

5

personally observe or participate in the hunts described by Black, Demaske, or the other hunters he identified in the Rule 30(b)(6) deposition. Because Link bases his statement in paragraph 2 of his December 10, 2020 declaration on inadmissible hearsay, King's motion to strike that paragraph will be granted.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

From the parties proposed findings of fact, I find the following facts to be material and undisputed.

### Undisputed Facts

Plaintiff Malcolm King is a citizen of the United Kingdom. Defendant Link Wild Safaris, LLC (LWS) is a Wisconsin limited liability company with its principal place of business in Minong, Wisconsin. All of LWS's members are Wisconsin citizens, making LWS a citizen of Wisconsin.

In 2018, King was interested in hunting a North Baja Desert Bighorn Sheep, which is also known as *Ovis canadensis cremnobates*. King was put into contact with LWS and its owner, Jay Link, through Anton Tonchev and Hunt Europe, a company owned by Tonchev and LWS. LWS is a well-known, profitable, and prestigious professional hunting outfitter that is staffed and owned by hunters who appreciate the distinction between specific subspecies of animals and their value to hunters.

In an April 12, 2018 email to Tonchev, Link set out the details of the hunt that LWS was offering to sell King: "We have the hunt all sorted out for Malcom [*sic*] King to Hunt the 'Cermnosates' [*sic*] North Baja Desert Sheep Sub-Species." Tonchev forwarded this email to

King. Around the same time, King spoke with Link over the telephone and told LWS that he wanted to hunt the North Baja Desert Bighorn Sheep and no other sheep species or subspecies.[2] Link told King that LWS was capable of arranging a hunt of the North Baja Desert Bighorn Sheep.

King and LWS entered into a written contract prepared by LWS.[3] LWS agreed to provide King a hunt for the North Baja Desert Bighorn Sheep on the Baja Peninsula in Mexico, starting on April 20, 3 2018. Specifically, the contract states that King would fly to Loreto, Baja California Sur, Mexico, and then be driven north four hours from the airport to the hunt unit. The contract provided that LWS would coordinate all aspects of the hunt, including but not limited to providing professional guide services, transportation, field trophy preparation, and accommodations. King paid LWS $51,000 for the hunt.

Relying on LWS's statements and the contract between the parties, King arrived in Loreto on April 19, 2018. He was met at the airport by Rolando Armando Alonzo Puc, the hunting guide selected and contracted by LWS. Puc drove King for approximately 35 to 40 minutes and then told King that they had arrived at the hunting camp. King questioned Puc about whether they were at the correct location, because King understood from the contract that the drive to the hunting area was supposed to be four hours north of the Loreto airport. Puc said that they were at the correct location.

---

[2] Link testified at LWS's Rule 30(b)(6) deposition that King made clear that the only subspecies of interest to him was the North Baja Desert Bighorn Sheep.

[3] The parties do not propose any facts indicating when they entered into the contract, but the copy of the contract attached to the complaint shows that it was signed and dated by King on December 4, 2018. Dkt. 1-1.

While hunting on April 22, 2018, guides working with Puc located a ram (a male sheep) that they identified as a "big sheep" that met King's requirements. Puc drove King to a place nearby the ram, and they hiked to an area within range of the ram. After approximately 90 minutes, the ram became visible to King and Puc, who identified the ram as meeting King's requirements. At Puc's direction, King shot and killed the ram. King hiked to the area where the ram's body was located, viewed and took photos with the ram, and then returned to camp. The GPS coordinates near where King killed the ram show that King was approximately 13 miles directly south of the Loreto airport. After King killed the ram, he returned to his home in the United Kingdom.

Approximately six weeks after the hunt, King submitted documentation regarding his hunts for consideration for the Weatherby Hunting and Conservation Award, including information about what he believed to be a successful hunt of the North Baja Desert Bighorn Sheep. On June 2, 2018, the Weatherby Foundation's Chairman, Rex Baker, responded and stated "Please send the North Baja Desert Sheep permit from April 2018 showing the location of the kill and the Latin name as it has been illegal to hunt this specie[s] for many years." King provided the GPS coordinates near where he killed the ram. Baker informed King that he could not have killed the North Baja Desert Bighorn Sheep, which has the Latin name *Ovis canadensis cremnobates*, in that area.

By letter dated June 5, 2018, LWS confirmed that the animal that King killed was a different subspecies of sheep, the South Baja Desert Bighorn Sheep, *Ovis canadensis weemsi*:

> I am writing this letter as confirmation that Link's Wild Safaris and Hunt Europe did indeed recently contract a hunt for Mr. Malcolm King for what we believed to be a Northern Baja Desert Sheep (cremnobates). With all good intentions, it is now clear

8

> that there was a miscommunication and misunderstanding with the contracted outfitter and it does appear that Mr. Malcolm [King] unintentionally harvested a Southern Baja Desert Sheep (weemsi). On behalf of Link's Wild Safaris and Hunt Europe we apologize for the miscommunication and confusion regarding this hunt. There was no malice or misrepresentation intended and we regret that the incorrect species was harvested.

Raymond Lee, a zoologist and biologist who for nearly four decades has studied the particular sheep species at issue in this litigation, opines that the North Baja Desert Bighorn Sheep cannot be found anywhere near the area where LWS took King or in the area described in the contract (four hours north of Loreto by vehicle). Lee also opines that permits for hunting these sheep have not been issued since 1990. *See* dkt. 15-2.

The South Baja Desert Bighorn Sheep has no value to King because he had already hunted that subspecies. Link and LWS were aware that King already successfully hunted the South Baja sheep.

King spent a total of $65,772.59 on the hunt, travel costs, and gratuity. According to King, the only suitable replacement for the North Baja Desert Bighorn Sheep, which cannot currently be hunted, is the Severtsov Argali sheep in Uzbekistan, which costs more than $100,000 to hunt.

## OPINION

### I. Summary Judgment Standard

Summary judgment is appropriate only if the moving party—in this case, King—can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). A "material fact" is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014). A "genuine issue" exists with respect to a material fact when "the evidence is such that a reasonable jury could return a verdict for the non-moving party," or in this case LWS. *Id.* "On the other hand, where the factual record taken as a whole could not lead a rational trier of fact to find for [LWS], there is nothing for a jury to do." *Bunn*, 753 F.3d at 682 (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Any doubt as to the existence of a genuine issue must be resolved against King. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). "As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 568 (7th Cir. 2017).

## II. Breach of Contract Claim

"Under Wisconsin law, a claim for breach of contract has three elements: (1) a contract between the parties that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *BMO Harris N.A. v. Rivers Transp., Inc.*, No. 17-CV-777-JDP, 2018 WL 4953004, *2 (W.D. Wis. Oct. 12, 2018) (citing *Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582). King argues that LWS breached its obligations to provide him with a successful hunt of the North Baja Desert Bighorn Sheep when it transported him to an area

where the subspecies cannot be found, causing him to suffer economic loss in the amount of $65,772.59.[4]

LWS contends that King contracted for one thing: a hunt for the Northern Baja Desert Bighorn Sheep four hours north of the airport in Loreto, Baja California Sur, Mexico. As LWS points out, the contract does not promise King a "successful" hunt or kill, and King has failed to present any evidence from which a reasonable jury would infer that LWS guaranteed a successful hunt. King counters that the contract's inclusion of "field trophy preparation" would be superfluous had LWS not intended to guarantee the killing of an animal. *See Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, ¶ 21, 293 Wis. 2d 458, 471, 718 N.W.2d 631, 637 ("We interpret a contract to give 'reasonable meaning to each provision and without rendering any portion superfluous.'"). King also asserts that if LWS had not intended to guarantee a successful hunt, then it would have explicitly disclaimed such a guarantee. However, King cites no authority for this last proposition.

"Contract language is construed according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶ 37, 363 Wis. 2d 699, 713, 866 N.W.2d 679, 685; *see also Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶ 26, 348 Wis. 2d 631, 642, 833 N.W.2d 586, 592 ("Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms."). Here, a reasonable person would not understand that the parties' cursory contract guaranteed a kill. It provides for a 10-day hunt in

---

[4] Although King also says the he incurred losses related to the waste of his time, damage to his reputation, interest, legal fees, and costs, he has not presented evidence in support of such damages or itemized them in any way.

a specific area with certain services, including transportation, meals, and field trophy presentation. Without additional evidence or an explicit contractual provision, a reasonable person would not assume that a contract for a hunting experience necessarily includes the killing of an animal. The inclusion of the term "field trophy preparation", by itself, did not require LWS to provide King with a *successful* hunt. *See Tufail*, 2013 WI 62, ¶ 37 (finding that "mere reference [in contract] to products used by a 'Church's Chicken store' does not represent that Midwest Hospitality may operate a Church's Chicken fast-food restaurant with a drive-through"). At most, a reasonable person would conclude from this term that if King succeeded in taking his specimen, then LWS had a duty to prepare a field trophy.

King fares better with his second argument regarding the location of the sheep. It is undisputed that the guide provided by LWS did not take King to the area identified in the contract. However, as LWS points out, King knew where the hunt was supposed to occur and admits that instead of driving four hours north, the guide took him 35-40 minutes south of the airport. Despite this knowledge, King hunted for several days in the area nearby and south of the airport. LWS contends that King's actions waived his contractual right for a hunt four hours north of the airport. *Nolop v. Spettel*, 267 Wis. 245, 249, 64 N.W.2d 859, 862 (1954) ("'A waiver is the intentional relinquishment of a known right.'") (quoting *Swedish American Nat'l Bank of Minneapolis v. Koebernick*, 136 Wis. 473, 479, 117 N.W. 1020, 1023 (1908)); *C.G. Schmidt, Inc. v. Tiedke*, 181 Wis. 2d 316, 321, 510 N.W.2d 756, 757-58 (Ct. App. 1993) ("[A] party to a contract can waive a condition that is for its benefit.") (citing *Godfrey v. Crawford*, 23

12

Wis. 2d 44, 49, 126 N.W.2d 495, 497 (1964)).[5] King does not contest this point in any meaningful way, but he correctly points out that there is no evidence that he voluntarily and intentionally waived his right to hunt a North Baja Desert Bighorn Sheep.

It is undisputed that the guide provided by LWS told King that he was in an area where the North Baja Desert Bighorn Sheep was located. This turned out to be false, as established by Lee's uncontroverted expert testimony, but King had no reason to know that the guide was incorrect, especially after questioning him on this very point and being assured that they were in the right spot.[6] Therefore, LWS failed to provide King with the opportunity to hunt a North Baja Desert Bighorn Sheep because it took him to an area where the animal could not be found. Because no reasonable jury could find otherwise based on the undisputed facts, King is entitled to summary judgment as to his breach of contract claim on this ground.

---

[5] LWS also argues that King had adequate opportunity to mitigate his alleged damages, either by insisting that he go to the hunting site identified in the contact or by not continuing to hunt at the too-far-south site for multiple days. LWS has forfeited this affirmative defense by failing to raise it in its answer, dkt. 4 at 10-11, or any earlier motion. *See Reed v. Columbia St. Mary's Hospital*, 915 F.3d 473, 478 (7th Cir. 2019) (defendant's failure to plead affirmative defense results in forfeiture if defendant failed to preserve defense by pleading it); *Lobermeier v. Gen. Tel. Co. of Wisconsin*, 119 Wis. 2d 129, 148, 349 N.W.2d 466, 475 (1984) ("Failure to mitigate damages is an affirmative defense which must be raised by the defendant in its answer.").

[6] I have struck the December 7, 2020 declarations of Brad Black (dkt. 23) and Jeff Demaske (dkt. 24) for being extremely–and prejudicially–untimely. That said, I note that both men claim to have harvested a *cremnobates* ram in an area roughly four hours north of the Loreto airport. This does not contradict Lee's testimony that "the identified place of harvest was well outside of *cremnobates* habitat range." Dkt. 15-2 at 4.

Black and Demaske also claim that they obtained valid permits in 2019 to hunt *cremnobates* rams, which directly contradicts Lee's testimony that *cremnobates* permits have not been issued for decades. As King points out, however, it is questionable whether this evidence has much relevance to whether permits were available at the time of King's hunt in 2018. In any event, if LWS had timely disclosed this testimony, then King could have explored it and perhaps impeached it, but LWS first disclosed these statements in its response to King's motion for summary judgment. Regardless whether this was intentional or just negligent, it's still impermissible sandbagging.

**III.  Section 100.18 Claim**

To prevail on his claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, King must prove three things:  (1) LWS made a representation to the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation caused King a pecuniary loss.  *Novell v. Migliaccio*, 2008 WI 44, ¶ 44, 309 Wis. 2d 132, 150, 749 N.W.2d 544, 552 (citing *K & S Tool & Die Corp. v. Perfection Mach. Sales Inc.*, 2007 WI 70, ¶ 19, 301 Wis.2d 109, 121-22, 732 N.W.2d 792, 798-99).  LWS does not appear to dispute that it represented to King, as a member of the public, that he could hunt a North Baja Desert Bighorn Sheep in the area four hours north of the Lareto airport and that this representation was made with the intent to induce King to contract for the hunt.  The parties also do not dispute that King incurred $65,772.59 for the hunt, travel costs, and gratuity.

LWS's sole argument is that there is a dispute as to whether the representation that King could hunt a North Baja Desert Bighorn Sheep in the area four hours north of the Loreto airport was true, deceptive or misleading.  As discussed above, King bases his claim on the expert report of Lee, who avers that it is not possible to hunt a North Baja Desert Bighorn Sheep in that area and that it was not even possible to obtain a permit to hunt this type of sheep at all in April 2018.  Although LWS attempts to dispute this with the declarations of Black, Demaske and Link, I have excluded their statements.  Because it is undisputed that LWS made a false representation that caused King pecuniary loss, King is entitled to summary judgment on his § 100.18 claim.

## IV. Damages and Fees

Under Wis. Stat. § 100.18(11)(b)2, King is entitled to recover his "pecuniary loss, together with costs, including reasonable attorney fees." Although King has not yet submitted a fee petition itemizing his attorney's fees and costs, it is undisputed that he suffered a pecuniary loss in the amount of $65,772.59. Therefore, he is entitled to an award of $65,772.59 plus attorney's fees and costs in an amount to be determined.

With respect to his breach of contract claim, King argues that he is entitled to the monetary damages he incurred as well as damages for the waste of his time, injury to his reputation, and interest. King has not presented evidence in support of his claim for these additional types of damages or itemized his losses in any way, so they must be resolved at trial.

### ORDER

IT IS ORDERED that

1. Plaintiff Malcolm King's motions to strike the declarations of Jeff Demaske and Bradford Black, dkt. 27, and paragraph two of the declaration of Jay Link, dkt. 28, are GRANTED.

2. Plaintiff's motion for partial summary judgment, dkt. 12, is GRANTED as to his breach of contract and § 100.18 claims as provided in this opinion and as to his claim for monetary relief in the amount of $65,772.59 for the cost of the hunt, travel expenses, and gratuity. Plaintiff also is entitled to attorney's fees and costs in an amount to be determined.

Entered this 25th day of January, 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

15